UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
                                     :

CHIRAG H. MANDAVIA,                     :
                     Plaintiff,    :

                                      :           12 Civ. 2188 (JPO)
         -against-                       :
                                        :      MEMORANDUM AND
COLUMBIA UNIVERSITY, et al.,          :              ORDER
                     Defendants.   :
                                       :
-------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

        This is an employment discrimination case brought by Chirag Mandavia ("Plaintiff")

against his former employer Columbia University ("Columbia") and several of his former

colleagues (David Figurski, Yuan Hua, and Angel Tibbs Filsaime).  Plaintiff has also sued his

erstwhile union, 1199 SEIU, for breach of the duty of fair representation while representing him

in his grievance process with Columbia.  Defendants have filed four separate motions to dismiss

and Plaintiff has filed a pleading styled a motion for reimbursement of a ticket and visa costs.

        For the reasons stated herein, Columbia's motion to dismiss (Dkt. No. 22) is granted in

part and denied in part.  The motions to dismiss filed by 1199 SEIU (Dkt. No. 48), Figurski and

Hua (Dkt. No. 58), and Filsaime (Dkt. No 89) are granted.  Plaintiff's motion for reimbursement

of a ticket and visa costs (Dkt. No. 29) is denied.

## I.  Background

### A.  Legal Standard

        On a motion to dismiss, facts in a plaintiff's complaint are assumed to be true.  *Cleveland*

*v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).  "The complaint is deemed to include any

written instrument attached to it as an exhibit or any statements or documents incorporated in it

by reference.  Moreover, when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (citations and quotation marks omitted).  "[T]he Court also may take judicial notice of public filings, including charges filed with the NLRB and NLRB decisions, on a Rule 12(b)(6) motion." *Pathmark, Inc. v. United Food & Commercial Workers Union, Local 342*, 08 Civ. 2217, 2009 WL 2901623, at *4 (E.D.N.Y. Sept. 3, 2009).  Finally, the Court may draw facts from the Plaintiff's affirmations in opposition to the motions to dismiss.  *Adekoya v. Fed. Bureau of Prisons*, 08 Civ. 1484, 2009 WL 1835012, at *1 n.1 (S.D.N.Y. June 18, 2009) *aff'd*, 382 F. App'x 26 (2d Cir. 2010).

      The Court accordingly takes notice of Plaintiff's May 27, 2011 EEOC filing (Columbia Ex. A ("EEOC Charge I")), Plaintiff's October 19, 2011 EEOC filing (Columbia Ex. B ("EEOC Charge II")), the Memorandum of Agreement signed by Plaintiff on April 20, 2011 (Columbia Ex. C ("the Agreement")), Plaintiff's June 15, 2011 NLRB filing (1199 SEIU Ex. C ("NLRB Charge")), the August 17, 2011 NLRB decision dismissing Plaintiff's charge (1199 SEIU Ex. D ("NLRB Ruling")), and the NLRB's ruling on Plaintiff's appeal (1199 SEIU Ex. E ("NLRB Appeal")).  The Court also accepts as true for purposes of this opinion facts contained in Plaintiff's affirmations in opposition to the several motions to dismiss.  However, Plaintiff has vastly exceeded the permissible number of filings, largely by styling his additional submissions "motions in further support."  (*See, e.g.*, Dkt. Nos. 46, 55, 68, 75, 77.)  This prompted a flurry of additional filings by Defendants.  The Court does not consider any facts or claims raised in these

further submissions.  Rather, it relies exclusively on the five affirmations in opposition that

Plaintiff submitted properly.  (Dkt. Nos. 33, 65, 66, 70, 97.)[1]

### B.  The Factual Narrative for Purposes of These Motions to Dismiss

Plaintiff was hired to work in Columbia's Department of Ophthalmology on November 1,

2006.  (EEOC Charge I at 3.)  His title was Senior Technician in Columbia's Department of

Microbiology & Immunology.  Starting on May 4, 2009, Plaintiff switched to a laboratory run by

Figurski, a professor of microbiology.  (*Id.*)  Following a disputed course of events in early 2011,

Plaintiff was suspended without pay in April 2011 and ultimately terminated pursuant to the

Agreement.  (*Id.* at 3-4.)  Plaintiff's last day at Columbia was May 11, 2011.  (*Id.* at 3.)

Plaintiff describes himself as a "long-term employee of Columbia University with almost

5 years of service accomplished, and . . . a member of the Union [1199 SEIU] in good standing."

(Dkt. No. 70 at 4.)  He reports that he has "always been a dedicated and conscientious employee"

and that "there have never been any complaints against [him] for any reason until the incident" at

issue in this case.  (EEOC Charge I at 3.)

As described in Plaintiff's statement to the EEOC, the course of events leading to his

suspension and termination began during his tenure in Figurski's laboratory.  (EEOC Charge I at

3.)  In that lab, he worked with three females:  Hua, Filsaime, and a non-party named Karin E.

Kram.  (*Id.*)  Kram was his supervisor, Hua held the same position as Plaintiff, and Filsaime was

a student.  (*Id.*)  Plaintiff claims that he suffered disparate treatment, even though he worked

harder than his colleagues, and states that his colleagues took credit for his work.  (*Id.*)  Plaintiff

alleges that he was "required to follow more stringent rules and regulations than other people in

the lab," even as his co-workers "were allowed to do whatever they wanted to do in the lab

---

[1] Defendant filed two affirmations in opposition to 1199 SEIU's motion to dismiss before 1199 SEIU filed its reply to these oppositions.  For purposes of simplicity, the Court accepts both affirmations.

including, coming in late, not being present in the lab, surfing the internet, and not doing their

fair share of work." (*Id.*) He specifically alleges that "I was treated differently [than Kram, Hua,

and Filsaime] because I am male." (*Id.*) He adds that Kram often screamed at him, stating on

"several occasions" that "I was foreign and should not be in the lab; that I was lucky to still be

here; and that I should have been fired long ago." (*Id.*) He reports that his complaints to

Figurski went unheeded. (*Id.*) He concludes that "I believe that [Kram] was abusive toward me

because of my sex, race and national origin," observing that Kram "did not treat the other lab

employees in this way." (*Id.*)

The story took a darker turn in February 2011, when Plaintiff allegedly overheard Kram

talking to Hua "about what she should do to get me fired." (*Id.*) Plaintiff asked Figurski to

intervene, but Figurski informed him "there was no higher authority" and "that if I was

unsatisfied with his actions, I should seek another position." (*Id.*) A complaint was later filed

against Plaintiff for sexual harassment, leading to Plaintiff's suspension without pay on March

23, 2011. (*Id.*) Plaintiff "believe[s] that [Kram] led these complaints against me and that they

were made because of my race and national origin, in retaliation for my complaints about the

disparate treatment that I received in the lab, and in retaliation for my complaints about the abuse

I was subjected to by [Kram]." (*Id.* at 4) He adds that the allegations of sexual harassment were

false and that the investigation into these charges was "superficial because of my race and

national origin." (*Id.*)

After an investigation of these charges, Plaintiff signed the Agreement. (*Id.*) In relevant

part, the Agreement provides that Plaintiff would "resign effective immediately," use all fifteen

days of unused vacation and personal sick leave prior to his last day of employment, receive two

weeks of additional pay, and receive a letter of reference from Figurski. It states that "as

4

required by your H1B visa, if you request it, we will provide you with a non-refundable ticket to return to the last country of residence." Plaintiff affirms that "he was fully and fairly represented by the Union." The Agreement also provides: "It is understood that settlement of this matter by Columbia University is to terminate all controversy between and among the parties and that the Union and [Plaintiff] hereby release Columbia University and its agents from any and all claims arising from the facts and circumstances at issue herein." The Agreement consists of nine brief paragraphs of text, together comprising one page, with a second page for signatures.

1199 SEIU provided Plaintiff with a union representative, Bennett Battista, during negotiations over the Agreement. (EEOC Charge I at 4.) In his EEOC Complaint, Plaintiff contends that he signed the Agreement "under duress because I felt like I had no other option," noting that Battista "informed [him] that I should sign the agreement because he had never seen anyone go back to the job." (*Id.*) Plaintiff elaborates upon this position in various affirmations in opposition to the present motions to dismiss. He writes that the Agreement was "unwillingly executed by me under duress and under coercion and subtle threats from Union representative Bennett Battista." (Dkt. No. 33 at 2.) He contends that "[P]laintiff was coerced, manipulated, and forced into signing a settlement with Columbia University that was clearly not in his favor and that led to termination of his employment." (Dkt. No. 70 at 3.)

Further, Plaintiff notes that he "may also have suffered indirect manipulation and coercion from the university, in addition and through the union, in trying to address his grievance and discriminatory charges." (Dkt. No. 97 at 2.) In one filing, he explains that "Columbia University did not honor multiple requests and emails from the Plaintiff for meetings and to address his grievances[,]" describes Columbia's "unwillingness to listen or meet with him and address his grievances and discrimination charges[,]" and argues that "based on the current

5

attitude of the University towards the Plaintiff, it is becoming increasingly clear that Columbia

University coerced and manipulated the Plaintiff, thereby committing an act of continued

discrimination against the Plaintiff." (*Id.*)  In another filing, Plaintiff describes his experience of

signing the Agreement.  He indicates that although he "has significant education and business

experience, [he] had never encountered or dealt with a situation such as this before," that he "had

possession of the release for only about an hour, and was asked to make a decision right then and

there in the Union office . . . he was not allowed to [take the Agreement home to confer with his

family and relatives]," that he "had no active role in the negotiations[,]" that he found the

language of the Agreement confusing and unclear, that "he had no legal counsel or advice at the

time of signing the Agreement[,]" and that he was "tricked into accepting benefits as parts of a

settlement that he was entitled to anyway." (Dkt. No. 70 at 6-7.)

Plaintiff adds that he was "under duress by undue influence and coerced into accepting

the release crafted and executed by Columbia University by his own Union representative

Bennett Battista," (*id.* at 7), and that he "experienced significant duress and life-changing

adverse events as a result of the direct actions of Columbia University," (*id.* at 8.)

In his EEOC Complaint, Plaintiff indicates that he "immediately regretted signing the

agreement and rescinded it," though his "attempts to rescind the agreement have been ignored by

both the union and Respondent." (EEOC Charge I at 4.)

 Plaintiff left Columbia on May 11, 2011.  On May 27, 2011, he filed a charge of

discrimination with the EEOC. (*Id.* at 1.)  On October 19, 2011, Plaintiff amended his charges to

include an act of retaliation by Columbia; to wit, Columbia tried "to withdraw my approved I-

140 (green card) application that actually belongs to me." (EEOC Charge II at 1.)

On June 15, 2011, Plaintiff filed a complaint with the NLRB alleging that 1199 SEIU

"has failed and refused, for reasons which are arbitrary, invidious, and discriminatory, to

properly process" his grievances pertaining to his suspension and ultimate termination.  (NLRB

Charge at 1.)  Specifically, Plaintiff alleged that 1199 SEIU "coerc[ed] him into entering into a

settlement of those grievances.  (*Id.*)  On August 17, 2011, the NLRB dismissed the charge:

> [I]t appears from the evidence that based upon its good-faith evaluation of your
> case, the Union recommended to you that you enter into a settlement of your
> grievance, and you agreed to do so.  You did not present and the investigation did
> not uncover any evidence that the manner in which the Union processed your
> grievance was influenced by arbitrary, invidious, or otherwise unlawful
> considerations.

(NLRB Ruling at 1-2.)  Plaintiff then appealed this decision and his appeal was denied on

September 30, 2011.  (NLRB Appeal at 1.)

Notwithstanding this disposition of his NLRB charge, Plaintiff argues that 1199 SEIU did

not "proactively investigate [his] claims of employment discrimination[,]" "did not support or do

anything on [his] behalf instead of just communicating and forcing the University's bidding upon

[him,]" engaged in "biased treatment" of Plaintiff, and coerced him into signing an agreement

"that the Union recognized and admitted to [him] was clearly not in his favor."  (Dkt. No. 65 at

3.)  Plaintiff alleges that during meetings to discuss his grievance, Battista said things like "you

are not entitled to shit," "I am getting tired of this," "I have seen many innocent people suffer

and you should not be pursuing this," and "I have seen very few people win grievances against

the University."  (*Id.* at 2.)  Plaintiff elaborates:

> [These] statements were not made in good faith or in a civilized way, but rather
> were threatening in nature and made in a high commanding voice, amounting to
> shouting and verbal intimidation.  There was significant waving of hands while
> talking and rough and uncouth manner, implying physical intimidation.   In
> addition, Plaintiff was isolated from contacting the University, and the Union
> representative often delayed significantly before responding, amounting to a
> disorganized and unclear discourse.  Bennett Battista also went back on his words

several times, not agreeing in subsequent meeting to conditions of settlement
agreed upon in previous meeting, indicating he never said so.

(*Id.* at 3.)  Plaintiff adds that the Union's "credibility and [] supposedly well-meaning intentions .

. . in trying to address the discrimination charges and grievances of the Plaintiff" are called into

question by the fact that the Union is representing Hua in this litigation.  (Dkt. No. 70 at 3.)

Plaintiff explains that "even though [Filsaime] is not a supervisory employee,

discriminatory behavior based on race, sex and national origin towards the Plaintiff and

subsequent false statements of sexual harassment that this person made, are integral to the

lawsuit and adversely and severely affected Plaintiff's employment and immigration status,

among other matters."  (Dkt. No. 97 at 4.)  He adds that "to establish a valid claim that led to

termination of Plaintiff's employment, [Filsaime] would be required to testify under oath under

possible prosecution for perjury and false statements."  (*Id.*)  Plaintiff describes Figurski as his

"supervisor," but describes Hua and Filsaime as "co-workers."  (Dkt. No. 70 at 4.)

Ultimately, Plaintiff sued Columbia, Figurski, Hua, and Filsaime for violations of Title

VII.  In the First Amended Complaint, Plaintiff claims that he was mistreated and terminated on

the basis of his race (Asian), sex (Male), and national origin (Asian Indian).  Plaintiff also alleges

retaliation, noting that after he filed his EEOC complaint, Columbia informed United States

Citizen & Immigration Services (USCIS) about the termination of his employment and thereby

triggered adverse immigration consequences.  Finally, Plaintiff alleges that 1199 SEIU violated

its duty of fair representation during the grievance process.  In his prayer for relief, Plaintiff

describes a battery of adverse events that followed his termination, including loss of immigration

status, inability to access fully vested retirement benefits, and substantial travel costs.  In sum, he

seeks $60,500 in damages, along with an injunction to maintain his immigration status and

punitive fines against Defendants.  Looking to the same underlying facts, Plaintiff has also filed

a motion for an order compelling Columbia to reimburse the ticket and visa costs he incurred while moving his family of five to India after losing his employment visa.

## II. Standard of Review

To survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 (2009). The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw [ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotations omitted). That said, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the [ ] complaint must be dismissed," *id.* at 570. In a recent summary of the plausibility standard, the Second Circuit explained that:

> [T]he *Twombly* Court stated that a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, but mere labels and conclusions or formulaic recitations of the elements of a cause of action will not do; rather, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, i.e., enough to make the claim plausible.

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal citations and quotation marks omitted). The Circuit clarified that this rule "does not impose a probability requirement at the pleading stage; it simply calls for enough facts

to raise a reasonable expectation that discovery will reveal evidence of illegality." *Id.* (citing *Twombly*, 550 U.S. at 556) (quotation marks omitted).

In suits "alleging employment discrimination or retaliation," a plaintiff is "not required to plead facts sufficient to establish a *prima facie* case." *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010) (Lynch, J.) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 515 (2002)). "Rather, the ordinary rules for assessing the sufficiency of a complaint under Federal Rule of Civil Procedure 8(a)'s notice pleading standard applies . . . [and] requires only a short and plain statement of the claim with sufficient factual heft to sho[w] that the pleader is entitled to relief." *Id.* at 512 (internal citations and quotation marks omitted).

The Second Circuit has noted that "when a plaintiff alleges a union's breach of its duty of fair representation, the 'complaint[] should be construed to avoid dismissal[].'" *Kavowras v. New York Times Co.*, 328 F.3d 50 (2d Cir. 2003) (quoting *Czosek v. O'Mara*, 397 U.S. 25, 27 (1970) (internal citations and quotation marks omitted)); *see also Eatz v. DME Unit of Local Union No. 3 of Int'l Broth. of Elec. Workers, AFL-CIO*, 794 F.2d 29, 34 (2d Cir. 1986) ("When an action involves a union's duty of fair representation, the Supreme Court advises the lower courts, as guardians of this duty, to construe complaints so as to avoid dismissals and to give plaintiffs the opportunity to file supplemental pleadings unless it appears beyond doubt that a good cause of action cannot be stated." (citation omitted)).

## III. Discussion

### A.  Individual Liability: Defendants Figurski, Filsaime, and Hua

It is settled law in the Second Circuit that Title VII does not provide for individual liability. *See Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) ("We have . . . determined that the remedial provisions of Title VII, including § 2000e-5, do not provide for individual

liability."); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (holding that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII"). This rule extends to supervisors as well as co-workers and subordinates. *See Tomka*, 66 F.3d at 1313; *Moccio v. Cornell Univ.*, 09 Civ. 3601, 2012 WL 3648450, at *36 (S.D.N.Y. Aug. 27, 2012).

Throughout the time period relevant to Plaintiff's Title VII claims, Filsaime was not an employee of Columbia, let alone an "employer." Rather, she was a graduate student and a visiting researcher in Figurski's laboratory. Hua was Plaintiff's co-worker and Figurski was his supervisor. None of these individuals could reasonably be described as his "employer."

Because Title VII does not provide for liability against individual defendants, Plaintiff's claims against Figurski, Filsaime, and Hua are dismissed with prejudice.[2]

### B.  The Validity of the Agreement: Defendant Columbia University

Construed liberally, Plaintiff's complaint advances two grounds for the conclusion that the Agreement did not constitute a valid waiver of his Title VII claims against Columbia: duress and failure to sign the Agreement knowingly and voluntarily. The duress ground does not rise above the *Iqbal*/*Twombly* plausibility threshold and must therefore be rejected. However, Plaintiff's alternative theory is plausible and, at this early stage in litigation, the Court must therefore reject Columbia's argument that the Agreement validly waived Plaintiff's Title VII claims.

### 1.     Duress

---

[2]  Plaintiff's argument that these individuals are subject to Title VII because their testimony may be critical to his Title VII claim against Columbia is incorrect as a matter of law.

Courts "will not enforce an agreement in which one party has unjustly taken advantage of the economic necessities of another and thereby threatened to do an unlawful injury." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001) (internal quotation marks omitted). "To void a contract on the ground of economic duress, the complaining party must show that its agreement was procured by means of (1) a wrongful threat that (2) precluded the exercise of its free will." *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011); *see also Kramer v. Vendome Group LLC*, 11 Civ. 5245, 2012 WL 4841310, at *6 (S.D.N.Y. Oct. 4, 2012) ("To prove economic duress, a party seeking to void a contract must plausibly plead that the release in question was procured by (1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative." (citation and quotation marks omitted)). "The party seeking to void a release agreement on grounds of economic duress shoulders a heavy burden." *Davis & Associates, Inc. v. Health Mgmt. Services, Inc.*, 168 F. Supp. 2d 109, 114 (S.D.N.Y. 2001) (quotation marks and citation omitted). "Because an element of economic duress is . . . present when many contracts are formed or releases given, the ability of a party to disown his obligations under a contract or release on that basis is reserved for extreme and extraordinary cases." *VKK Corp.*, 244 F.3d at 123. "Mere hard bargaining positions, if lawful, and the press of financial circumstances, not caused by the defendant, will not be deemed duress." *Bus. Incentives Co., Inc. v. Sony Corp. of Am.*, 397 F. Supp. 63, 69 (S.D.N.Y. 1975). "A mere demonstration of financial pressure or unequal bargaining power will not, by itself, establish economic duress." *Interpharm*, 655 F.3d at 142.

"A duress defense is evaluated according to an objective standard." *Mathias v. Jacobs*, 167 F. Supp. 2d 606, 614 (S.D.N.Y. 2001) (citing *Eisenstein v. Kelly Music & Ent. Corp.*, 97

Civ. 4649, 1998 WL 289734, at *4 (S.D.N.Y. June 4, 1998)).  Further, in a contract dispute like

this one, the duress at issue must have originated from the defendant.  *See, e.g.*, *Kramer*, 2012

WL 4841310, at *6 ("Critically, to prove duress, a plaintiff must demonstrate that the difficult

circumstances she faces are a result of the *defendant's* actions . . . to constitute duress, a

*defendant's* actions must have amounted to threats that preclude[d] the exercise of [a plaintiff's]

free will." (internal citations and quotation marks omitted) (emphasis added)).

Finally, even where a party is subject to duress, the resulting contract is voidable, not

void.  *See E.E.O.C. v. Am. Exp. Pub. Corp.*, 681 F. Supp. 216, 219 (S.D.N.Y. 1988) ("Contracts

induced by duress are voidable, not void; acceptance of benefits under the agreement constitutes

ratification." (citing *Anselmo v. Manufacturers Life Ins. Co.*, 771 F.2d 417, 420 (8th Cir. 1985);

*DiMartino v. City of Hartford*, 636 F. Supp. 1241, 1252 (D. Conn. 1986))).

Plaintiff argues that the Agreement should be deemed void because it was signed under

duress from 1199 SEIU and, to a lesser extent, Columbia.  With respect to any duress exerted by

1199 SEIU via Battista, this claim fails as a matter of law because a party to a contract cannot

invoke a duress defense where his own advisor or representative pressured him into acceptance

of a deal.  *Evans v. Waldorf-Astoria Corp.*, 827 F. Supp. 911, 914 (E.D.N.Y. 1993), *aff'd*, 33

F.3d 49 (2d Cir. 1994) ("In this case, plaintiff has claimed neither duress by physical compulsion

nor by threat.  Plaintiff alleges duress by undue influence.  Her claim, however, is that she was

under the influence of *her own attorney* and not of the defendant.  Duress by other than the

opposing party to a contract cannot constitute compulsion sufficient to void the contract."

(citation omitted)).  Further, even if Plaintiff's claim of union-based duress did not fail on this

ground, it would fail on the alternative ground that duress merely renders a contract voidable, not

void, and by his own admission Plaintiff accepted at least some of the Agreement's benefits.

13

Specifically, he accepted the opportunity to use all fifteen days of unused vacation and personal sick leave prior to his last day of employment, and received two weeks of additional pay.[3]  Thus, a duress argument that looks to Battista's conduct necessarily fails to void the Agreement.

This conclusion does not end the inquiry.  Plaintiff adds that he "may also have suffered indirect manipulation and coercion from the university, in addition and through the union, in trying to address his grievance and discriminatory charges."  (Dkt. No. 97 at 2.)  Plaintiff elaborates by noting that "Columbia University did not honor multiple requests and emails from the Plaintiff for meetings and to address his grievances[,]" describing Columbia's "unwillingness to listen or meet with him and address his grievances and discrimination charges[,]" and arguing that "based on the current attitude of the University towards the Plaintiff, it is becoming increasingly clear that Columbia University coerced and manipulated the Plaintiff, thereby committing an act of continued discrimination against the Plaintiff."  (*Id.*)

Even construed liberally, Plaintiff's description of Columbia's behavior falls far short of economic duress.  Columbia's refusal to schedule meetings, disinterest in hearing his grievances, and generally hostile attitude in negotiations simply do not constitute wrongful threats sufficient to override a person's free will.  Plaintiff undoubtedly had options other than signing the Agreement, such as pursuing his legal remedies, *see Reid v. IBM Corp.*, 95 Civ. 1755, 1997 WL 357969, at *7 (S.D.N.Y. June 26, 1997), and Plaintiff's pleadings and opposition papers do not disclose any coercion sufficient even to suggest duress.  Plaintiff invokes the magical word "duress," but in so doing he merely states a legal conclusion unsupported by enough facts to cross the line into the realm of the plausible.  Further, as explained above with respect to 1199

---

[3] Plaintiff's assertion that he sought to repudiate the contract at the first opportunity is thus undercut by the timeline set forth in his own papers, which indicates that after signing the Agreement, he conformed his remaining time at Columbia to the schedule of vacation time and pay set forth in the Agreement.  Attempting to repudiate a contract after accepting certain of its benefits does not suffice to void an otherwise voidable contract.

SEIU, any such duress would at most have rendered the contract voidable, not void.  Because

Plaintiff later accepted the benefits of the contract, he could not claim duress even if his claim

were otherwise meritorious (or, at this stage, plausible).  The Court thus finds that Plaintiff

cannot escape the Agreement's liability waiver by invoking the doctrine of duress.

### 2.  Knowing and Voluntary Waiver

An individual may "settle or waive claims of discrimination in violation of [Title VII] so

long as the waiver is made knowingly and voluntarily."  *Laniok v. Advisory Comm. of Brainerd*

*Mfg. Co. Pension Plan*, 935 F.2d 1360, 1365 (2d Cir. 1991).  The Second Circuit applies a

"totality of the circumstances" inquiry to ascertain whether a release was "knowing and

voluntary."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 438 (2d Cir. 1998) (citing

*Nicholas v. NYNEX, Inc.*, 929 F. Supp 727, 730 n.1 (S.D.N.Y. 1996)).  The Circuit has

enumerated a number of factors that are particularly relevant to this inquiry:

> 1) the plaintiff's education and business experience, 2) the amount of time the
> plaintiff had possession of or access to the agreement before signing it, 3) the role
> of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement,
> 5) whether the plaintiff was represented by or consulted with an attorney, and 6)
> whether the consideration given in exchange for the waiver exceeds employee
> benefits to which the employee was already entitled by contract or law.
>
> In addition, courts have considered a seventh factor – whether the employer
> encouraged the employee to consult an attorney and whether the employee had a
> fair opportunity to do so.

*Id.* (citing *Bormann v. AT & T Communications, Inc.*, 875 F.2d 399, 403 (2d Cir. 1989) (quoting

*EEOC v. American Express Pub. Corp.*, 681 F.Supp. 216, 219 (S.D.N.Y. 1988))).

This seven-factor, totality of the circumstances *Bormann* analysis demands a "peculiarly

fact-sensitive inquiry."  *Livingston*, 141 F.3d at 437-8.  Moreover, none of the seven factors is

individually dispositive.  *See, e.g.*, *Rozenfeld v. Dep't of Design & Const. of City of New York*, 10

Civ. 4002, 2012 WL 2872157, at *5 (E.D.N.Y. July 12, 2012) (noting that "Plaintiff did not

consult an attorney prior to signing the Stipulation," but "this does not automatically render the Stipulation invalid, and courts have found waivers to be valid when a plaintiff did not consult an attorney prior to signing"); *Laramee v. Jewish Guild for Blind*, 72 F. Supp. 2d 357, 360 (S.D.N.Y. 1999) ("These factors are neither exhaustive nor must all of the factors be satisfied before a release is enforceable." (citation omitted)).

As Judge Rakoff has explained, the *Bormann* analysis departs from ordinary contract principles and imposes a "a more rigorous and subjective 'voluntariness' test in deference to the 'strong Congressional purpose . . . to eradicate discrimination in employment.'" *Kristoferson v. Otis Spunkmeyer, Inc.*, 965 F. Supp. 545, 548 (S.D.N.Y. 1997) (citation omitted).

The Court considers each of the seven *Bormann* factors in turn, noting whether it favors or undermines Plaintiff's claim that the Agreement was not executed knowingly and voluntarily.

### a.        Plaintiff's Education and Business Experience

As befits a former Senior Technician in the Columbia University Department of Microbiology & Immunology, Plaintiff "has significant education and business experience." Although Plaintiff has not specified his precise level of education, his job description and self-description unmistakably suggest that it is higher than the level required by courts in this district to satisfy the first *Bormann* factor. *See, e.g.*, *Bachiller v. Turn On Products, Inc.*, 00 Civ. 8701, 2003 WL 1878416, at *4 (S.D.N.Y. Apr. 14, 2003) *aff'd*, *Bachiller v. Turn on Products, Inc.*, 86 F. App'x 465 (2d Cir. 2004) ("Plaintiff, who has a High School Equivalency Diploma and who at the time her employment was terminated was an accounts payable clerk, was capable of understanding the Release and the Notice."). The Court acknowledges Plaintiff's caveat that he "had never encountered or dealt with a situation such as this before," but finds that the first *Bormann* factor clearly weighs in favor of the Agreement's validity.

>   **b.**      **Amount of Time in Possession of or with Access to the Agreement**

Plaintiff reports that he possessed the Agreement for only about an hour and was pressured into making a decision on the spot.  Columbia disagrees with this characterization.  Adopting Plaintiff's facts, which describe a short time span and high-pressure environment, the Court finds that one hour was not a sufficient period of time to weigh in favor of the Agreement's validity.  District courts in the Second Circuit have concluded that a period of months will suffice, *e.g.*, *Glugover v. Coca-Cola Bottling Co. of New York, Inc.*, 91 Civ. 6331, 1993 WL 312269, at *9 (S.D.N.Y. Aug. 12, 1993) *aff'd sub nom. Glugover v. Coca-Cola of N.Y.*, 60 F.3d 810 (2d Cir. 1995), that a few days will suffice, *e.g.*, *Cordoba v. Beau Deitl & Assocs.*, No. 02 Civ. 4951, 2003 WL 22902266, at *5 (S.D.N.Y. Dec. 8, 2003), and that even a few hours will suffice, *e.g.*, *Evans*, 827 F. Supp. at 913.  Nonetheless, the claim that Plaintiff could have knowingly and voluntarily signed the Agreement after a mere hour of review sets the bar too low.  While that document is only one page and is relatively unambiguous, a decision of this magnitude may easily have required more than just an hour of reflection and evaluation to support a finding of knowing and voluntary release.

>   **c.**      **Plaintiff's Role in Shaping the Terms of the Agreement**

Plaintiff offers a contradictory account of his involvement in the negotiations over the Agreement.  On the one hand, he alleges that he "had no active role in the negotiation."  On the other hand, he contends that his input was responsible for modifications in his favor—including a letter of recommendation and two weeks of additional pay (less applicable payroll taxes).  He suggests a possible resolution to this tension by arguing that he was already entitled to that letter and to the additional pay.  Columbia contests this characterization, but in the absence of any governing law or documents of which to take judicial notice to ascertain Plaintiff's rights upon

17

termination, the Court must accept Plaintiff's account as true for purposes of a motion to dismiss. Unlike plaintiffs who successfully bargained for substantial benefits, for instance an increase in severance payment, *Russomanno v. Murphy*, No. 09 Civ. 8804, 2011 WL 609878, at *4 (S.D.N.Y. Feb. 16, 2011), it is not clear from the allegations that Plaintiff played an active role in shaping the terms of the Agreement. The Court finds that this *Bormann* factor counts in Plaintiff's favor.

### d.       Clarity of the Agreement

The Agreement is a one-page document. Many of its provisions are easily understood: "Mr. Mandavia will resign effective immediately," "University will not contest his application for employment benefits," "Mr. Mandavia agrees he was fully and fairly represented by the Union." Perhaps the most complex provision is the release: "It is understood that settlement of this matter by Columbia University is to terminate all controversy between and among the parties and that the Union and [Plaintiff] hereby release Columbia University and its agents from any and all claims arising from the facts and circumstances at issue herein." Yet even with respect to the lease provision, the Court concludes that the Agreement is "clear and unambiguous." *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002); *see also Evans*, 827 F. Supp. at 913 ("The agreement is extremely simple, and lays out clearly plaintiff's responsibility for withdrawing her charges . . . ."). Plaintiff agreed to "release Columbia University and its agents from any and all claims arising from the facts and circumstances at issue herein." This is not technical language. This factor weighs in Defendant's favor.

### e.       Representation By or Consultation With Counsel

Battista assisted Plaintiff in his negotiations with Columbia. Courts generally conclude that assistance of counsel weighs heavily in favor of the validity of release agreements. *See, e.g.*,

*Nicholas*, 929 F. Supp. at 731 ("Not only did plaintiff have a fair opportunity to consult with an attorney between October 12 and December 9, but he has acknowledged that he met with an attorney during that period in order to discuss the release."). It is unclear whether Battista is an attorney. Regardless, the fact that Plaintiff was assisted by someone who specializes in such negotiations would ordinarily count against him. That is particularly true where the Agreement provides that "[Plaintiff] agrees he was fully and fairly represented by the Union." Here, however, the circumstances are more complicated. It appears that Plaintiff *did* have a fair chance to obtain counsel, but instead chose to rely on his Union representative. *See Matusovsky*, 186 F. Supp. 2d at 400 ("Although Matusovsky was not represented by an attorney, he had fair opportunity to obtain one prior to commencing the Civil Court action or during its pendency."). Further, Plaintiff could have benefited from Battista's assistance. Nonetheless, Plaintiff claims that Battista failed to represent him adequately—or, worse, actively undermined him. It would be unreasonable to count Battista's guidance against Plaintiff in a case where Plaintiff independently claims that Battista—as his union representative—breached a legal duty of fair representation. *Cf. Okoro v. Marriott Int'l, Inc.*, 07 Civ. 165, 2007 WL 980429, at *2 (S.D.N.Y. Apr. 3, 2007) ("The Ritz claims that Okoro was represented by his union during the negotiation of the Release, but Okoro disputes the level of union involvement throughout the process . . . . Summary judgment is therefore not appropriate . . . ."). Accordingly, the Court finds that this *Bormann* factor is neutral as between Plaintiff and Defendant.

### f.      Consideration

Plaintiff argues that he did not receive any compensation to which he was not already entitled by contract or law. Defendant disputes this claim, but for purposes of a motion to

dismiss, the Court accepts Plaintiff's version of this disputed fact.  Accordingly, the Court finds

that this *Bormann* factor weighs in Plaintiff's favor.

> g.        **Encouragement & Opportunity to Meet with an Attorney**

Plaintiff claims that he was pressured by Columbia to make a decision on the spot and

that his only guidance came from Battista, who does not appear to be an attorney.  Plaintiff does

not indicate that he was encouraged to meet with an attorney and, unlike in some other cases

from this district, the Agreement itself does not offer that advice.  *See, e.g.*, *Kramer*, 2003 WL

1878416, at *4 ("Courts in this district have held that a release's encouragement to consult with

an attorney weighs in favor of the agreement's enforceability." (citation omitted)); *Malaney*,

2008 WL 126642, at *5; *Nicholas*, 929 F. Supp. at 731.  Thus, the Court finds that this final

*Bormann* factor weighs in Plaintiff's favor.

> i.        **Conclusion**

Looking to the facts set forth in Plaintiff's pleadings and opposition papers, the Court

finds that, for purposes of the present motions to dismiss, four *Bormann* factors support

Plaintiff's argument that the Agreement was not executed knowingly and voluntary (time in

possession or with access to the agreement; shaping the terms of the agreement; consideration;

encouragement and opportunity to meet with an attorney), that two factors militate against

Plaintiff (education and business experience; clarity of the agreement), and that one factor is

neutral (representation by or consultation with counsel).  Although *Bormann* is a fact-sensitive

test that ultimately directs judicial attention to the totality of the circumstances, these conclusions

weigh against a conclusion at the motion to dismiss stage that Plaintiff knowingly and

voluntarily released Columbia from liability.

Columbia's motion to dismiss is accordingly denied.  However, should Columbia decide to seek summary judgment pre-discovery or shortly after discovery begins, the Court would entertain a targeted summary judgment motion focused on the Agreement's validity.

## C.  Retaliation: Defendant Columbia University

Plaintiff alleges that Columbia retaliated against him when, upon execution of the Agreement, Columbia informed the United States Citizen & Immigration Services (USCIS) of its intention to revoke sponsorship of Plaintiff's green card application.  (EEOC Charge II.)[4]

"Retaliation claims, like discrimination claims, are subject to the *McDonnell Douglas* burden-shifting analysis." *Phillip v. City of New York*, 09 Civ. 442, 2012 WL 1356604, at *14 (E.D.N.Y. Apr. 19, 2012).  "To set forth a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) a causal connection existed between the protected activity and the adverse action." *McCormick v. Donovan*, 365 F. App'x 247, 249 (2d Cir. 2010) (citation omitted).  "The mere fact that [a] plaintiff [has] earlier filed an EEOC complaint is not enough to support a contention that the subsequent conduct of defendants was a result of the earlier complaint." *Wilson v. Reuben H. Donnelley Corp.*, 98 Civ. 1750, 1998 WL 770555, at *4 (S.D.N.Y. Nov. 2, 1998).

Here, as required by federal law, Columbia notified USCIS of the termination of its employer/employee relationship with Plaintiff.  *See* 8 C.F.R. 214.  Notwithstanding the familiar

---

[4] In EEOC Charge I, Plaintiff alleges that Kram lied about his behavior as "retaliation" for his earlier complaints to Figurski about discrimination in the laboratory.  He does not allege retaliation on the basis of his discussion with Figurski of Kram's complaints against him in the laboratory.  But even if he did allege such retaliation, that claim would fail as a matter of law according to Plaintiff's own factual narrative:  as Plaintiff relates the course of events, his coworkers were motivated by discriminatory goals in concocting a scheme to get him fired; then he complained to Figurski about his coworkers' behavior; and only later was fired on the basis of the allegations concocted by his coworkers before he complained to Figurski.  There is no suggestion of retaliatory motive on the part of Figurski or the University, nor is there any suggestion that his coworkers retaliated against him for speaking with Figurski (since their plan, as Plaintiff describes it, had already been triggered by that point in time).  On Plaintiff's facts, his coworkers—the source of the discrimination—were motivated by discriminatory rather than retaliatory objectives.

requirement that a complaint allege enough facts to "raise a right to relief above the speculative

level," *Arista Records*, 604 F.3d at 120, Plaintiff does not allege any specific facts that could

give rise to a plausible inference that Columbia's motive in revoking sponsorship of his

immigration petition was retaliatory.  To the contrary, Plaintiff appears to offer little more than a

highly speculative argument that because Columbia's immigration-related action occurred later

in time than his first EEOC Complaint, the Court should infer retaliatory motive.  This argument

does not suffice.  *See Wilson*, 1998 WL 770555, at *4 ("'Post hoc, ergo propter hoc' is a logical

fallacy that has never been the law of this Circuit.").  Ultimately, Plaintiff cannot satisfy the

fourth element of a Title VII retaliation claim, which requires a causal connection between a

plaintiff's protected activity and a defendant's adverse action.

>    Columbia's motion to dismiss Plaintiff's retaliation claim is accordingly granted.

### D.  Reimbursement:  Defendant Columbia

>    Plaintiff has filed a motion requesting that the Court order Columbia to reimburse him for

the ticket and visa costs of moving his family of five out of the United States.  (Dkt. No. 29.)  He

bases this motion on "facts that Columbia Univ. initially sponsored an immigration application []

indicating long-term employment offer, & later tried to revoke it, creating hardship for family

who relied on Columbia's sponsorship & promise of fair treatment."  (*Id.*)

>    Plaintiff has cited no legal authority for the proposition that Columbia is obliged to pay

his family's transportation costs.  Nor does he cite the terms of any contract with Columbia

requiring such payment.  Columbia affirms that it is under a legal and contractual duty to cover

the reasonable costs of Plaintiff's return transportation to India (*see* Dkt. No. 37 at 1 (citing 8

U.S.C. 1184(c)(5)(A))), but denies any obligation to cover these costs for Plaintiff's entire family

and adds that Plaintiff's request for unspecified "visa costs" lacks legal support.

Given the absence of any contractual or other legal basis for an obligation on Columbia's part to pay for "visa costs" and the transportation costs of Plaintiff's family members, the Court denies Plaintiff's motion for reimbursement.

**E.  Claims Against Defendant 1199 SEIU**

Plaintiff claims that 1199 SEIU breached its duty of fair representation.  Specifically, he claims that his Union representative, Battista, breached this duty by discouraging, isolating, insulting, and pressuring him during negotiations with Columbia.  1199 SEIU argues that this claim is time-barred.  Specifically, 1199 SEIU characterizes Plaintiff's argument as a hybrid claim under § 301 and contends that it is subject to—and fails to satisfy—the six-month statute of limitations period set forth in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b).  *See DelCostello v. Int'l Bhd. Of Teamsters*, 62 U.S. 151 (1983).

The "duty of fair representation is implied from § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a)."  *White v. White Rose Food*, 237 F.3d 174, 179 n.3 (2d Cir. 2001).  "A breach of the statutory duty of fair representation occurs . . . when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."  *Vaca v. Sipes*, 386 U.S. 171, 190 (1967); *see also Marquez v. Screen Actors Guild*, 525 U.S. 33, 44 (1998) (the duty of fair representation requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct").

A six-month limitations period applies to unfair representation claims.  *Eatz v. DME Unit of Local Union No. 3 of Int'l Broth. of Elec. Workers, AFL-CIO*, 794 F.2d 29, 33 (2d Cir. 1986).  "The Supreme Court has [also] held that in an action where employees sue both their employer for breach of the collective bargaining agreement ('CBA') pursuant to § 301(a) of the Labor

23

Management Relations Act ('LMRA'), 29 U.S.C. § 185(a)(1982) and their union for breach of the duty of fair representation (so-called 'hybrid' actions), the action must be brought within six months of accrual." *Sheehan v. U.S. Postal Serv.*, 6 F. Supp. 2d 141, 145 (N.D.N.Y. 1997) (citing *DelCostello*, 462 U.S. at 169-171).  This limitations period "accrue[s] no later than the time when plaintiffs knew or reasonably should have known that such a breach had occurred, even if some possibility of nonjudicial enforcement remained." *Santos v. Dist. Council of New York City & Vicinity of United Broth. of Carpenters & Joiners of Am., AFL-CIO*, 619 F.2d 963, 969 (2d Cir. 1980).  The bringing of an NLRB charge establishes actual knowledge of a breach. *See Kavowras v. New York Times Co.*, 328 F.3d 50, 55 (2d Cir. 2003) ("His bringing of the NLRB charge establishes that he had actual knowledge of the breach."); *Moore v. Roadway Express, Inc. & Local 707*, 07 Civ. 997, 2008 WL 819049, at *6 (E.D.N.Y. Mar. 25, 2008) ("Duty of fair representation claims are governed by a six-month statute of limitations that begins to accrue when the employee knew or should have known of the breach of the duty."). Exceptions to this limitations rule include the continuing violations doctrine, waiver, estoppel, and equitable tolling.  *See Welenc v. PAL Envtl. Corp., Local 78*, 09 Civ. 8523, 2011 WL 846729 at *4, *6 (S.D.N.Y. Feb. 7, 2011) *report and recommendation adopted sub nom. Welenc v. PAL Envtl. Corp.*, 09 Civ. 8523, 2011 WL 1044486 (S.D.N.Y. Mar. 21, 2011).

Here, Plaintiff filed an NLRB charge against 1199 SEIU on June 15, 2011, alleging a violation of the duty of fair representation relating to Plaintiff's indefinite suspension on May 23, 2011 and his termination on May 11, 2011.  Contrary to 1199 SEIU's assertion, Plaintiff's allegation is not properly characterized as a "hybrid" claim, since Plaintiff did not simultaneously sue his erstwhile employer, Columbia, for violation of a collective bargaining agreement.  Rather, Plaintiff alleges a free-standing allegation of breach of duty based on 1199

SEIU's alleged deficiencies or malfeasance in representing and advising him during the negotiations with Columbia leading to the Agreement.

Regardless, a six-month limitations period applies to this claim.  By filing a charge with the NLRB on June 15, 2011, Plaintiff demonstrated actual knowledge of the alleged breach of his union's duty of fair representation.  His NLRB charge was resolved on August 17, 2011; an appeal of that decision was resolved by September 30, 2011.  Plaintiff then filed this lawsuit on March 22, 2012, amending it on April 27, 2012 to include 1199 SEIU as a defendant.  Because Plaintiff waited more than six months to sue SEIU 1199 after he possessed actual knowledge of the alleged breach, the Court concludes that his breach of duty claim against SEIU 1199 is untimely. The Court further concludes that none of the exceptions to this rule, including continuing violations, waiver, estoppel, or equitable tolling, apply on these facts.

Plaintiff's claim against 1199 SEIU must therefore be dismissed with prejudice.

**IV.     Conclusion**

For the foregoing reasons, Filsaime's motion to dismiss with prejudice is GRANTED,

Hua and Figurski's motion to dismiss with prejudice is GRANTED, Columbia University's

motion to dismiss with prejudice is GRANTED in part and DENIED in part, 1199 SEIU's

motion to dismiss with prejudice is GRANTED, and Plaintiff's motion for reimbursement is

DENIED.

The Clerk of Court is directed to close the motions at docket entries 22, 29, 48, 58 & 89.

SO ORDERED.

Dated:  New York, New York
        December 12, 2012

_____
J. PAUL OETKEN
United States District Judge