UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
CHIRAG H. MANDAVIA,                                  :
                           Plaintiff,          :
:         12 Civ. 2188 (JPO)
        -against-                                   :
:         MEMORANDUM AND
COLUMBIA UNIVERSITY, et al.,                         :             ORDER
                           Defendants.  :
:
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      This is an employment discrimination case brought by Chirag Mandavia ("Plaintiff") against his former employer, Columbia University ("Columbia"). Plaintiff also alleged claims against a number of other individuals and entities, but the Court dismissed those claims pursuant to Rule 12(b)(6) in an opinion published on December 12, 2012. *See Mandavia v. Columbia Univ.*, No. 12 Civ. 2188, 2012 WL 6186828 (S.D.N.Y. Dec. 12, 2012). In that ruling, examining the factors outlined in *Bormann v. AT & T Communications, Inc.*, 875 F.2d 399, 403 (2d Cir. 1989), the Court denied Columbia's motion to dismiss on the basis of an agreement in which Plaintiff purported to waive all claims against Columbia arising from the events at issue in this case ("the Agreement"). *Mandavia*, 2012 WL 6186828, at *9-12. The Court added, however, that it "would entertain a targeted summary judgment motion focused on the Agreement's validity." *Id.* at *12. On February 20, 2013, Columbia moved for summary judgment on the basis of the Agreement. For the reasons that follow, Columbia's motion is granted.

**I.    Standard of Review**

      Summary judgment is appropriate in a case where the evidence, viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any

1

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Vacold, L.L.C. v. Cerami*, 545 F.3d 114, 121 (2d Cir. 2008). The moving party bears the burden of showing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" only if it will affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For there to be a "genuine" issue about the fact, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether there is a genuine issue of material fact, the Court must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). "Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994) (citations omitted). Where there is no evidence in the record "from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact," summary judgment is proper. *Catlin v. Sobol*, 93 F.3d 1112, 1116 (2d Cir. 1996). While the nonmoving party can defeat summary judgment by presenting evidence sufficient to create a genuine issue of material fact, it is well-established that "[m]ere speculation and conjecture [are] insufficient to preclude the granting of the motion." *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

**II.     Background**

Plaintiff Chirag Mandavia was employed as a senior technician at Columbia's Department of Microbiology & Immunology. While employed there, he was a member of 1199 SEIU Union Healthcare Workers East ("the Union"). A collective bargaining agreement ("the CBA") governed the terms and conditions of Plaintiff's employment.

On March 30, 2011, Mary Ann Carlese, Director of Labor Relations at the Columbia University Medical Center, learned that Plaintiff's employment was to be terminated following an internal investigation into complaints of sexual harassment.  That day, she informed Bennett Battista, Plaintiff's union representative, of Columbia's decision to terminate Plaintiff's employment.  Battista is not an attorney and strongly discouraged Plaintiff from hiring outside counsel.  Plaintiff states that Battista "threatened him that he would stop communicating the will of the University, if an outside attorney were engaged."  Battista therefore represented Plaintiff in his negotiations with Columbia.  Early in that process, Carlese informed Battista that Columbia would be willing to offer Plaintiff the opportunity to resign in lieu of being terminated in exchange for signing a separation agreement and release.

Carlese states that, "[t]hrough the following weeks, Battista, in the capacity of Mandavia's representative, and I, as representative for Columbia, engaged in negotiations and exchanged proposals toward such an agreement."  The CBA provided that the only benefit to which Plaintiff was entitled upon the separation of his employment was payment for the three weeks of vacation and personal days that he had accrued.  On April 8, 2011, Battista proposed that in consideration for a release of claims against Columbia, Plaintiff remain on Columbia's payroll for eight weeks (including the three weeks he was owed), obtain neutral references, remain eligible to apply for other positions at Columbia, undergo training and write an apology, avoid contact with other staff in his Department, and have his record expunged.  Carlese memorialized these proposed terms in an e-mail to Sheila Garvey, Assistant Vice President of Labor Relations, on April 7, 2011.  In that e-mail, Carlese indicated that she had spoken with "Diane," who was opposed to allowing Plaintiff to apply for other jobs at Columbia.

Columbia rejected Plaintiff's proposal for eight weeks' salary to be paid over time on the ordinary payroll. It also objected to his request for a letter of recommendation from Dr. Figurski and his request for permission to apply for other positions at the university. Columbia did, however, express willingness to pay Plaintiff an additional two weeks' salary beyond his three weeks of accrued vacation and personal days. Battista replied that a recommendation letter from Figurski and the ability to remain on Columbia's payroll for an extended period of time were necessary conditions to any waiver of Plaintiff's claims. Carlese reports that, "[a]fter a series of exchanges, Columbia ultimately agreed to grant Mandavia's request for a letter of recommendation" and presented Battista with a proposed draft of that letter.

Negotiations continued and, on April 13, 2011, Battista told Carlese that Plaintiff would agree to a release of claims in exchange for the ability to remain on Columbia's payroll for five weeks, neutral references from the Human Resources department, the recommendation letter from Figurski, and Columbia's representation that it would not contest his application for unemployment benefits. Carlese memorialized these proposed terms in an e-mail to Garvey on April 13, 2011. Carlese explains that she "advised Battista that Columbia would consent to the proposed terms, except that Columbia would only keep Mandavia on the payroll for the period of three weeks representing his accrued vacation and personal days and would pay him the additional two weeks' salary in a lump sum."

Plaintiff maintained a difficult relationship with Columbia and Battista throughout the negotiations. He explains that "Battista had no or little say in the proceedings, and was essentially a 'pawn' in Columbia's scare tactics and was only being used to communicate and assert Columbia's will." He adds that "Carlese . . . never communicated directly with the Plaintiff . . . [she communicated] the University's will to Battista." Further, Plaintiff describes

4

his contacts with Battista as "brief, sporadic and chaotic," noting that he was "completely isolated." In his view, "the Union, through Battista, whether knowingly or unknowingly, acted as an agent for Columbia University and did nothing to avert the termination of his employment or investigating the matter, choosing instead to employ arm-twisting tactics combined with the promise of minor rewards in order to trick the Plaintiff into accepting Columbia's Agreement."

Ultimately, final terms were memorialized in the Agreement, which Plaintiff executed on April 20, 2011 and Carlese executed on April 21, 2011. The Agreement provides in full:

> Following sets forth the agreement dated April 20, 2011 between Columbia University and 1199 SEIU/SSA Area (Union) relating to the employment status of Chirag Mandavia, a Senior Technician in the Department of Microbiology & Immunology. This memorandum shall settle all controversy related to this matter.
>
> 1. Mr. Mandavia will resign effective immediately. Mr. Mandavia has fifteen (15) days of unused vacation and personal leave. Mr. Mandavia agrees to schedule all unused vacation and personal days prior to his last day of employment (April 21 through May 11, 2011). Therefore, Mr. Mandavia's last day of employment will be May 11, 2011.
>
> 2. Upon separation from employment with the University, the Department agrees to pay Mr. Mandavia two (2) weeks of additional pay less applicable payroll taxes.
>
> 3. University will not contest his application for unemployment benefits. Eligibility for such benefits will be determined by the NYS Department of Labor and the Department of Homeland Security.
>
> 4. The University agrees to provide a letter of reference written by Dr. David Figurski (attached). Mr. Mandavia agrees that he will not give Dr. Figurski as a telephone reference. In response to outside inquiries and in accordance with University policy, Human Resources will verify only position title, dates of employment and department.

> 5. Mr. Mandavia is not eligible for future employment within Columbia University and Mr. Mandavia agrees he will not apply for positions within the University
>
> 6. As required by your H1B visa, if you request it, we will provide you with a non-refundable ticket to return to the last country of residence. Please inform the Departmental Administration, Edie Schumansky, in writing, by the last day of your employment (May 11, 2011) if you wish a ticket purchased or not. Please contact the International Affairs Office with regard to your immigration status. Your immigration status is based on the employer/employee relationship you have with Columbia University and therefore it is imperative that you contact the IAO immediately to discuss your options following the termination of your salary.
>
> 7. Mr. Mandavia agrees he was fully and fairly represented by the Union.
>
> 8. Disposition of this matter and the settlement reached is based upon its own particular circumstances and is not to be considered a precedent for any future matters.
>
> 9. It is understood that settlement of this matter by Columbia University is to terminate all controversy between and among the parties and that the Union and Mr. Mandavia hereby release Columbia University and its agents from any and all claims arising from the facts and circumstances at issue herein. Neither negotiation nor execution of this agreement shall constitute nor operate as an admission of any kind by Columbia University that it has violated any city, state or federal law or that it has violated the collective bargaining agreement between 1199 SEIU/SSA Area and Columbia University.

Plaintiff had several hours to review the Agreement. He requested an opportunity to take it home with him overnight to evaluate it and consult with his family, but that request was denied. He had not seen a draft of the document. Plaintiff states that he "was forced into an Agreement by the intimidatory [sic] behavior and scare tactics of Battista, who did not even inform Plaintiff that he was entitled to at least 3 weeks of pay even if he were terminated." Specifically, Battista

pressured Plaintiff to sign the agreement by telling him that he would most likely lose any grievance process and insisting that Plaintiff was not "entitled to shit."

### III.   Discussion[1]

####   A.   Legal Standard

An individual may "settle or waive claims of discrimination in violation of [Title VII] so long as the waiver is made knowingly and voluntarily." *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1365 (2d Cir. 1991).  The Second Circuit applies a "totality of the circumstances" inquiry to ascertain whether a release was "knowing and voluntary." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 438 (2d Cir. 1998) (citing *Nicholas v. NYNEX, Inc.*, 929 F. Supp 727, 730 n.1 (S.D.N.Y. 1996)).  The Circuit has enumerated a number of factors that are particularly relevant to this inquiry:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.
>
> In addition, courts have considered a seventh factor – whether the employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so.

*Id.* (citing *Bormann v. AT & T Communications, Inc.*, 875 F.2d 399, 403 (2d Cir. 1989) (quoting *EEOC v. American Express Pub. Corp.*, 681 F. Supp. 216, 219 (S.D.N.Y. 1988))).

---

[1] In his opposition filing, Plaintiff discusses a number of claims—including duress and breach of the duty of fair representation—that have already been addressed and dismissed.  Those claims are not revisited in this opinion, which is limited to the Agreement's validity.

This seven-factor, totality of the circumstances *Bormann* analysis demands a "peculiarly fact-sensitive inquiry." *Livingston*, 141 F.3d at 437-8. Moreover, none of the seven factors is individually dispositive. *See, e.g.*, *Laramee v. Jewish Guild for Blind*, 72 F. Supp. 2d 357, 360 (S.D.N.Y. 1999) ("These factors are neither exhaustive nor must all of the factors be satisfied before a release is enforceable." (citation omitted)); *Joseph v. Chase Manhattan Bank, N.A.*, 751 F. Supp. 31, 34 (E.D.N.Y. 1990) ("Defendant urges this Court to interpret the *Bormann* list of factors as being comprehensive. It is not. These factors comprise only some of those which can be considered in a totality of circumstances test, and the Court is careful to state that it is not attempting to delineate an exhaustive list of factors."). Some courts have refused to find a voluntary and knowing waiver even where a majority of the *Bormann* factors weigh in favor of that conclusion, *see, e.g.*, *Campbell v. Alliance Nat. Inc.*, 107 F. Supp. 2d 234, 241 (S.D.N.Y. 2000) ("Despite the fact that the majority of the *Bormann* factors favor a finding of a voluntary and knowing waiver, I cannot reject Campbell's claim that she did not understand that she would be waiving her statutory rights to bring suit by signing the Release."), while others have found knowing and voluntary waiver where some of the *Bormann* factors point the other way, *see, e.g.*, *Nicholas*, 929 F. Supp. at 732. "The essential question is a pragmatic one: whether, in the totality of the circumstances, the individual's waiver of his right can be characterized as 'knowing and voluntary.'" *Laniok*, 935 F.2d at 1368.

As Judge Rakoff has noted, the *Bormann* analysis departs from ordinary contract principles and imposes a "a more rigorous and subjective 'voluntariness' test in deference to the

'strong Congressional purpose . . . to eradicate discrimination in employment.'" *Kristoferson v. Otis Spunkmeyer, Inc.*, 965 F. Supp. 545, 548 (S.D.N.Y. 1997) (citation omitted).[2]

### B.   Application of Law to Facts

The Court considers each of the seven *Bormann* factors in turn, noting whether it favors or undermines Plaintiff's claim that the Agreement was not executed knowingly and voluntarily.

#### 1.   Plaintiff's Education and Business Experience

"The first factor turns on whether a plaintiff had sufficient ability at the time of signature to be 'capable of understanding' the release." *Kramer v. Vendome Grp. LLC*, No. 11 Civ. 5245, 2012 WL 4841310, at *3 (S.D.N.Y. Oct. 4, 2012) (citation omitted).  Courts customarily test for such ability by examining a plaintiff's business and education experience.

As befits a former Senior Technician in the Columbia University Department of Microbiology & Immunology, Plaintiff is highly educated.  He holds a Doctorate of Medicine and a Master of Science in Biology.  This sets him far above the educational background that courts deem sufficient to support a finding of knowing and voluntary waiver.  *See, e.g.*, *Laramee*, 72 F. Supp. 2d at 360 (collecting cases and noting that having a high school education and a secretarial position does not warrant invalidating a release).

---

[2] Accordingly, a number of district courts have refused to find knowing and voluntary waiver at the summary judgment stage when a majority of *Bormann* factors cut against that conclusion. *See, e.g.*, *Drees v. Cnty. of Suffolk*, No. 06 Civ. 3298, 2009 WL 875530, at *6 (E.D.N.Y. Mar. 30, 2009); *Okoro v. Marriott Int'l, Inc.*, No. 07 Civ. 165, 2007 WL 980429, at *2 (S.D.N.Y. Apr. 3, 2007); *Gorman v. Earmark, Inc.*, 968 F. Supp. 58, 61-62 (D. Conn. 1997); *Zveiter v. Brazilian Nat. Superintendency of Merch. Marine*, 833 F. Supp. 1089, 1097 *opinion supplemented on reconsideration*, 841 F. Supp. 111 (S.D.N.Y. 1993); *Glugover v. Coca-Cola Bottling Co. of New York, Inc.*, No. 91 Civ. 6331, 1993 WL 312269, at *9 (S.D.N.Y. Aug. 12, 1993) *aff'd sub nom. Glugover v. Coca-Cola of N.Y.*, 60 F.3d 810 (2d Cir. 1995).

Nonetheless, Plaintiff argues that his background in the biomedical sciences did not prepare him to read and understand a document such as the Agreement. He contends that "[t]his is akin to a situation wherein, so to say, a French non-speaking rocket scientist is asked to not only read, but understand and interpret, material in French language, which he has never learned or encountered before." He adds that the stress of the situation compromised his ability to understand the significance of the Agreement with respect to waiver of his claims.

This argument carries some force. While courts have not set a high bar for the educational experience prerequisite to satisfaction of this factor, they have also looked for business and management experience. *See, e.g.*, *Bachiller v. Turn On Products, Inc.*, No. 00 Civ. 8701, 2003 WL 1878416, at *4 (S.D.N.Y. Apr. 14, 2003) *aff'd*, *Bachiller v. Turn on Products, Inc.*, 86 F. App'x 465 (2d Cir. 2004) ("Plaintiff, who has a High School Equivalency Diploma and who at the time her employment was terminated was an accounts payable clerk, was capable of understanding the Release and the Notice."); *Reid v. IBM Corp.*, No. 95 Civ. 1755, 1997 WL 357969, at *5 (S.D.N.Y. June 26, 1997) ("First, plaintiff's education and business experience— business studies in high school and community college, and 10 years of managerial experience at IBM—is sufficient to warrant the inference that he understood the Release."); *Nicholas*, 929 F. Supp. at 731 ("Gittens is a high school graduate who has completed subsequent training in computer programming. At the time he was terminated, plaintiff occupied a management position at Nynex and was responsible for leading teams of programmers on particular projects. His education and business experience certainly indicate that he is capable of understanding this release." (citations omitted)). The absence of such business experience is a basis for caution, even where a plaintiff has reached an advanced level of education. *See, e.g.*, *Johnston v. Carnegie Corp. of New York*, No. 10 Civ. 1681, 2011 WL 1085033, at *8 (S.D.N.Y. Feb. 24,

2011) *report and recommendation adopted*, No. 10 Civ. 1681, 2011 WL 1118662 (S.D.N.Y. Mar. 23, 2011) ("On the one hand, Plaintiff graduated from college and was employed by Carnegie for more than two years prior to his termination.  On the other hand, Plaintiff appears to allege that he had little work experience prior to his employment with Carnegie, and it is plain that he was hired there as a low-level employee . . . [I]t is not clear that Plaintiff's education and experience gave him sufficient sophistication to understand all of the agreement's terms." (citations omitted)); *Glugover v. Coca-Cola Bottling Co. of New York, Inc.*, No. 91 Civ. 6331, 1993 WL 312269, at *9 (S.D.N.Y. Aug. 12, 1993) *aff'd sub nom. Glugover v. Coca-Cola of N.Y.*, 60 F.3d 810 (2d Cir. 1995) ("As for the first factor, although Glugover has some college education, it is unclear whether she was sophisticated enough in business affairs to understand the terms of the release.").

      Ultimately, however, the first factor cuts in favor of a finding that Plaintiff knowingly and voluntarily signed the Agreement.  Even acknowledging that Plaintiff lacks familiarity with legal documents and business arrangements, such experience would not have been necessary to interpret and comprehend the Agreement.  Notably, unlike some cases where courts relied on lack of business experience to cast doubt on a waiver, the Agreement is brief and clear.  *See Johnston*, 2011 WL 1085033, at *8.  Further, Plaintiff's doctoral degrees indicate strong skills in reading, analysis, and interpretation.  While the situation in which Plaintiff signed the waiver may have been stressful, that is generally true of waivers signed upon termination of an employment relationship and does not provide a sufficient basis for concluding that Plaintiff was unable to understand or assess the Agreement's terms.

      Accordingly, given Plaintiff's level of education and his experience working at Columbia, he was undoubtedly capable of understanding the Agreement.

### 2. Amount of Time in Possession of or with Access to the Agreement

Plaintiff states that he had "a few hours" to review the Agreement. He also states that he engaged in sporadic and isolated communication with Battista over the nearly-two week period of negotiations between Battista and Carlese. Courts have concluded that a period of months will suffice, *e.g.*, *Glugover*, 1993 WL 312269, at *9, that a few days will suffice, *e.g.*, *Cordoba v. Beau Deitl & Assocs.*, No. 02 Civ. 4951, 2003 WL 22902266, at *5 (S.D.N.Y. Dec. 8, 2003), and, critically, that even a few hours can suffice, *e.g.*, *Evans v. Waldorf-Astoria Corp.*, 827 F. Supp. 911, 913 (E.D.N.Y. 1993) *aff'd* 33 F.3d 49 (2d Cir. 1994). Plaintiff acknowledges that he had several hours to review the Agreement, some of whose terms may have been known to him for nearly two weeks. *See Knoll v. Equinox Fitness Clubs*, No. 02 Civ. 9120, 2003 WL 23018807, at *4 (S.D.N.Y. Dec. 22, 2003) *amended on reconsideration in part*, No. 02 Civ. 9120, 2004 WL 439500 (S.D.N.Y. Mar. 10, 2004) (noting that opportunity to review drafts of a waiver before final authorization bears on this *Bormann* factor).

As a result, this is not a case where the plaintiff was pressured into waiver after a brief, high-pressure period. *See, e.g.*, *Mandavia*, 2012 WL 6186828, at *10 (a period of one hour not enough); *Zveiter v. Brazilian Nat. Superintendency of Merch. Marine*, 833 F. Supp. 1089, 1097 *opinion supplemented on reconsideration*, 841 F. Supp. 111 (S.D.N.Y. 1993) (period of "a few moments" not enough). Accordingly, Plaintiff's sporadic opportunities to review the terms of the Agreement during the two-week negotiation period, and the several hours afforded to him the day that he signed, are sufficient for the second *Bormann* factor to weigh in favor of the Agreement's validity. *See, e.g.*, *Shain v. Ctr. for Jewish History, Inc.*, No. 04 Civ. 1762, 2006 WL 3549318, at *4 (S.D.N.Y. Dec. 7, 2006) (noting that several hours was "more than adequate to fully read and understand the brief and straightforward language of the release").

### 3. Plaintiff's Role in Shaping the Terms of the Agreement

The parties do not dispute that Battista, Plaintiff's union representative, played a major role in shaping the Agreement's terms. In the course of Columbia's negotiations with Battista, the parties disputed and modified terms relating to the letters of recommendation, payment of salary for a period of time beyond that required by the CBA, eligibility for other positions at Columbia, and Columbia's stance on any application by Plaintiff for unemployment benefits. Such negotiations unquestionably indicate that Plaintiff, acting through Battista, actively shaped the terms of the Agreement. *See, e.g.*, *Russomanno v. Murphy*, No. 09 Civ. 8804, 2011 WL 609878, at *4 (S.D.N.Y. Feb. 16, 2011) (factor satisfied where the plaintiff played an important role in bargaining for an increase in severance payment).

Plaintiff's suggestion that Battista acted independently, and that Plaintiff played no role in the negotiations, does not persuade. Plaintiff acknowledges that Battista contacted him on a number of occasions, "spelled out the terms to Plaintiff each time," and made "propositions and demands" while speaking with Plaintiff. The evidence thus suggests that Plaintiff was directly involved in or aware of these negotiations. Indeed, the Agreement expressly includes Plaintiff's affirmation that "Mr. Mandavia agrees he was fully and fairly represented by the Union." In any event, even if Plaintiff's relationship with his union representative was strained, the fact remains that Battista acted as Plaintiff's representative in achieving fairly significant modifications to the terms of the Agreement—and those modifications are fairly attributable to Plaintiff. *See, e.g.*, *Evans*, 827 F. Supp. at 913 ("The negotiation process also demonstrates that plaintiff had some role, albeit limited, in dictating the terms of the agreement . . . The undisputed facts of this case point clearly to plaintiff's knowing waiver of her right to sue.").

The third *Bormann* factor therefore favors a finding of knowing and voluntary waiver.

13

### 4.     Clarity of the Agreement

The Agreement is a one-page document.  Many of its provisions are easily understood: "Mr. Mandavia will resign effective immediately"; "University will not contest his application for employment benefits"; "Mr. Mandavia agrees he was fully and fairly represented by the Union."  Perhaps the most complex provision is the release:  "It is understood that settlement of this matter by Columbia University is to terminate all controversy between and among the parties and that the Union and [Plaintiff] hereby release Columbia University and its agents from any and all claims arising from the facts and circumstances at issue herein."  Yet even with respect to the release, the Agreement is "clear and unambiguous."  *See Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002); *see also Evans*, 827 F. Supp. at 913 ("The agreement is extremely simple, and lays out clearly plaintiff's responsibility for withdrawing her charges."). Plaintiff agreed to "release Columbia University and its agents from any and all claims arising from the facts and circumstances at issue herein."  This is not technical language.  *See Kramer*, 2012 WL 4841310, at *4 (noting that a release was "in plain English that would be clear to a layperson").  Accordingly, the fourth *Bormann* factor weighs in the Agreement's favor.

### 5.     Representation By or Consultation With Counsel

Battista represented Plaintiff in his negotiations with Columbia.  Courts generally conclude that assistance of counsel weighs heavily in favor of the validity of release agreements. *See, e.g.*, *Nicholas*, 929 F. Supp. at 731 ("Not only did plaintiff have a fair opportunity to consult with an attorney between October 12 and December 9, but he has acknowledged that he met with an attorney during that period in order to discuss the release.").  Here, however, Plaintiff objects on the ground that, in his view, Battista did not adequately represent Plaintiff's interests in the negotiations.  That argument does not succeed.

14

First, it appears that Plaintiff did have a fair chance to obtain counsel, but instead chose to rely on his union representative. *See Matusovsky*, 186 F. Supp. 2d at 400 ("Although Matusovsky was not represented by an attorney, he had fair opportunity to obtain one prior to commencing the Civil Court action or during its pendency."). While Plaintiff represents that Battista discouraged him from hiring outside counsel, there is no evidence that Plaintiff was, in fact, unable to do so. Rather, Plaintiff—pressured by Battista—declined to hire a lawyer.

Second, the general rule is that "[u]nion representation satisfies the fifth [*Bormann*] factor." *Khadaroo v. New York Presbyterian Hosp.*, No. 10 Civ. 1237, 2012 WL 893180, at *5 (S.D.N.Y. Mar. 15, 2012); *see also Prunella v. Carlshire Tenants, Inc.*, 94 F. Supp. 2d 512, 516-17 (S.D.N.Y. 2000) (finding knowing and voluntary waiver where, *inter alia*, "although plaintiff was not represented by counsel, his union representative signed the stipulation, and . . . typed the stipulation"); *Knight v. State, Dep't of Health*, No. 97 Civ. 2114, 2000 WL 306447, at *7 (D. Conn. Feb. 22, 2000) *aff'd sub nom. Knight v. Connecticut Dep't of Pub. Health*, 275 F.3d 156 (2d Cir. 2001) (finding knowing and voluntary waiver where, *inter alia*, "[a] union representative assisted Knight in the negotiations"). This is particularly true where both parties—employer and employee—act through representatives. *See McKoy v. Potter*, No. 01 Civ. 1984, 2002 WL 31028691, at *8 (S.D.N.Y. Sept. 12, 2002) *subsequently aff'd sub nom. McKoy v. U.S. Postal Serv.*, 98 F. App'x 28 (2d Cir. 2004) ("As to representation, McKoy was not represented by an attorney at the mediation session but he was represented by a union representative. The USPS similarly was not represented by counsel but by a management representative, Elizabeth Schneyer, McKoy's supervisor.").[3] And Plaintiff has not submitted evidence suggesting that

---

[3] Moreover, separate from his affidavit, Plaintiff has not offered any evidence in the form of letters, e-mails, depositions, or materials from Battista to support his claim that Battista did not

Battista did not participate in negotiations, leaving Plaintiff to fend for himself.  *See Okoro v. Marriott Int'l, Inc.*, No. 07 Civ. 165, 2007 WL 980429, at *2 (S.D.N.Y. Apr. 3, 2007) (finding that this *Bormann* factor weighed against waiver where the plaintiff "dispute[d] the level of union involvement throughout the process").

Accordingly, this *Bormann* factor cuts in favor of the Agreement's validity.

### 6. Consideration

"A release is not supported by sufficient consideration unless something of value is received to which [the employee] had no previous undisputed right." *DiMartino v. City of Hartford*, 636 F. Supp. 1241, 1249 (D. Conn. 1986) (upholding release of ADEA claims).  The CBA provided that Plaintiff was entitled only to three weeks of accrued vacation and personal days.  In the Agreement, Columbia agreed to pay that money to Plaintiff over time on the ordinary payroll, give him two additional weeks' salary in a lump sum, and provide Plaintiff with a neutral letter of recommendation.  These benefits qualify as the sort of consideration that, under *Bormann*, militate in favor of the Agreement's validity.  *See, e.g.*, *Kramer*, 2012 WL 4841310, at *5 ("[a]s a result of signing the Release, Plaintiff received a month's salary and other benefits that she would not have been entitled to had she simply been terminated." (citations omitted)); *Laramee*, 72 F. Supp. 2d at 361 (finding that this *Bormann* factor weighed in

---

represent him adequately.  *See Rozenfeld v. Dep't of Design & Const. of City of New York*, 875 F. Supp. 2d 189, 200 (E.D.N.Y. 2012) ("Plaintiff consulted with his union representative. Plaintiff has provided no credible evidence that his union representative failed to represent him adequately, and the representative signed the Stipulation below Plaintiff's signature.").  To the contrary, Plaintiff affirmed in the Agreement that he was "fully and fairly represented by the Union."  Of course, Plaintiff was free to try to prove a separate claim of breach of the duty of fair representation by his union.  In fact, he alleged such a claim in this case, though the Court dismissed it as time barred.  *See Mandavia*, 2012 WL 6186828, at *13-14.

favor of the validity of a release where the "plaintiff received greater compensation than she would have been entitled to had she not signed the release"); *Dewey*, 1995 WL 542447, at *2.

Accordingly, this *Bormann* factor weighs in favor of the Agreement's validity.

### 7. Encouragement and Opportunity to Meet with an Attorney

Plaintiff states that he was pressured by Columbia and Battista to make a quick decision, and that Battista urged him not to meet with outside counsel. There is no record evidence that Plaintiff was encouraged to meet with an attorney and, unlike in some other cases from this district, the Agreement itself does not offer that advice. *See, e.g.*, *Kramer*, 2012 WL 4841310, at *4 ("Courts in this district have held that a release's encouragement to consult with an attorney weighs in favor of the agreement's enforceability." (citation omitted)); *Malaney*, 2008 WL 126642, at *5; *Nicholas*, 929 F. Supp. at 731. While Plaintiff had an opportunity to meet with a lawyer, notwithstanding Battista's discouragement, he did not do so and was not encouraged by Columbia to do so. Accordingly, this final *Bormann* factor weighs in Plaintiff's favor.

### 8. Summary: Knowing and Voluntary Waiver

In this case, "[t]he essential question is a pragmatic one: whether, in the totality of the circumstances, [Plaintiff's] waiver of his right can be characterized as 'knowing and voluntary.'" *Laniok*, 935 F.2d at 1368. Reading the record in the light most favorable to Plaintiff, and resolving all credibility determinations in his favor, no reasonable juror would find that the Agreement is invalid. Nearly all of the *Bormann* factors militate in favor of the conclusion that Plaintiff signed the Agreement knowingly and voluntarily. A highly educated man, Plaintiff had several hours to read a clear and straightforward contract that had been generated through weeks of negotiations between his union representative and Columbia. That contact provided Plaintiff with a number of benefits beyond those to which he was entitled, including money and a neutral

letter of recommendation.  Although Plaintiff vigorously insists that Battista was an inadequate representative, and that he would not have agreed to a deal that terminated his employment with Columbia, this after-the-fact regret does not undermine the validity Agreement.

In the end, while he plainly regrets that decision now, it is clear that Plaintiff knowingly and voluntarily waived his Title VII claim against Columbia in the Agreement when he signed it on April 20, 2011.  Accordingly, summary judgment is appropriate.

## IV.  Conclusion

For the foregoing reasons, Columbia's motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motion at Dkt. No. 105 and to close this case.

SO ORDERED.

Dated: New York, New York
       June 3, 2013

_____
J. PAUL OETKEN
United States District Judge